IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| KELLY R. HURTT, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-12-445 |
| BALTIMORE CNTY., MARYLAND, *et al.*, | * | |
| Defendants | * | |

## MEMORANDUM

Pending before the Court is Defendants' motion for summary judgment as to all claims in Plaintiff Kelly R. Hurtt's suit claiming employment discrimination and retaliation. (ECF No. 27.) The Court has considered Plaintiff's opposition (ECF No. 33) and Defendants' reply (ECF No. 40) and found no hearing necessary, Local Rule 105.6 (D. Md. 2011). The motion will be granted.

### *I. Background*

Plaintiff Hurtt filed this suit against Baltimore County, Maryland;[1] James P. O'Neill, who was, during the time referenced in the complaint, the director of the Baltimore County Department of Corrections ("Department"); Sharon Tyler, who was and is the program manager in charge of all nonsecurity aspects of the Department and the direct supervisor of Patricia Alderman; and Patricia Alderman, who was and is the head of the Alternative Sentencing Unit ("ASU") and who was Hurtt's direct supervisor. (Am. Compl. ¶¶ 5-8, 16; Pl.'s Opp'n, Ex. 21,

---

[1] Plaintiff originally sued the Baltimore County Department of Corrections (Compl., ECF No. 1), but substituted Baltimore County for the Department in her amended complaint (ECF No. 6). The Department was, therefore, terminated as a party.

Tyler Dep. 9:20—10:9, 13:10-12, Mar. 14, 2013; Ex. 20, Alderman Dep. 8:4-7, Mar. 7, 2013.)[2] Hurtt was a correctional program specialist in the ASU from December 5, 2005, until her termination on August 16, 2011. (Defs.' Mot. Supp. Mem. 1.) According to Tyler, "The mission of the [ASU] is to provide court-ordered offenders the ability to complete their probations in a satisfactory manner by either completing community service or, if they're on the [Treatment Accountabilities for Safer Communities] program, to rehabilitate, [and] become productive citizens of the county." (Defs.' Mot. Ex. 3, Tyler Dep. 10:10-17; Supp. Mem. 4-5.) Hurtt claims in her complaint that she was subjected to racial discrimination in violation of 42 U.S.C. § 1981 (Count I); that she was retaliated against in violation of 42 U.S.C. § 1981 (Count II); that Defendants violated her First Amendment right to free speech and 42 U.S.C. § 1983 (Count III); that Defendants violated her Fifth Amendment rights to substantive and procedural due process and 42 U.S.C. § 1983 (Count IV); that Defendants violated her Fourteenth Amendment right to equal protection and 42 U.S.C. § 1983 (Count V); and that Defendants conspired to interfere with her civil rights of due process and equal protection and to deny her equal privileges and immunities under the laws, in violation of 42 U.S.C. § 1985(3) (Count VI). (Am. Compl.)

## II. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to

---

[2] The Court notes the unnecessary difficulty in its review of this case due to the lack of compliance by both parties with the Court's Local Rule 105.4 and 105.5, which establish the standards for providing a table of contents for lengthy memoranda and the organization and presentation of exhibits. Neither party provided the required table of contents, and neither party tabbed their exhibits. Instead, the Court was essentially presented with two stacks of undifferentiated pages and expected to hunt through them for individual exhibits, which totaled 23 for each side. In addition, Defendants provided no index to their exhibits, making the hunt even more difficult. Counsel are cautioned that these procedural rules do matter to the Court and counsel, therefore, risk having their submissions rejected in the future by the Court for failure to comply with the Local Rules.

current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## III. Analysis

After its exhaustive review of the record, the Court concludes that not one scintilla of evidence supports any claims of the Plaintiff. This conclusion is now explained.

### A. *Count I: Racial Discrimination – 42 U.S.C. § 1981*

Plaintiff, who is black,[3] alleges she was discriminated against on the basis of her race. (Am. Compl. ¶ 100.) Her immediate supervisor, Alderman, is also black. (*Id.* ¶ 8.) Alderman's

---

[3] The Court has noted that Plaintiff refers to herself as black, while sometimes referring to certain people about whom she complains as Caucasian and other times referring to them as white. "Black" and "African-American" are often used interchangeably in our country, and the Court in this opinion is simply adopting the manner in which Plaintiff has chosen to refer to her race. Likewise, the Court has utilized the term "white" and the term "nonblack" to provide parity to its discussion.

supervisor, Tyler, is white. (*Id.* ¶ 7.) O'Neill, then-director of the Department, is white. (¶ 6.)[4] Hurtt alleges that "Defendants engaged in an intentional pattern of discrimination, harassment and intimidation toward [her] because of her race"; she also alleges she was treated differently from nonblack employees. (*Id.* ¶ 101.) She claims the terms and conditions of her employment were unequal to those afforded to nonblack employees, and she further claims Defendants routinely and intentionally harassed her, because of her race, while she was carrying out her assigned work duties. (*Id.* ¶¶ 102, 103.) Hurtt presents a lengthy list of complaints. Some complaints focus on disciplinary decisions by supervisors; others focus on nondisciplinary decisions or actions by supervisors; yet, others focus on events involving coworkers. (*Id.* ¶¶ 20-97.) The Court will analyze the first kind of complaint—disciplinary decisions by supervisors—separately from the second and third kinds of complaint.

A claim of racial discrimination under 42 U.S.C. § 1981 is analyzed identically to one made under Title VII of the Civil Rights Act of 1964. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 n.4 (4th Cir. 2005) (citing *Bryant v. Aiken Reg. Med. Ctrs. Inc.*, 333 F.3d 536, 545 n.3 (4th Cir. 2003)); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). With regard to the allegedly discriminatory disciplinary decisions by Hurtt's supervisors, such a claim may be proven only with evidence of intentional discrimination underlying the adverse employment actions. *See Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004). If neither direct nor circumstantial evidence of discriminatory intent is presented, then a plaintiff may utilize the burden-shifting proof scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998). In this case,

---

[4] Not sued, but in the chain of command, is Deborah Richardson, then the deputy director and now the director of the Department; Richardson is black. At the time of the events in the complaint, she reported to O'Neill, was Tyler's direct supervisor, participated in the disciplinary process involving Hurtt, and agreed with the decisions made. (Defs.' Mot. Ex. 9, Richardson Aff.)

Hurtt has relied upon the *McDonnell Douglas prima facie* method of establishing Defendants' liability. (Pl.'s Opp'n 30-36.)

Under this method of proof, a plaintiff may present evidence that she is a member of a protected class, she was subjected to an adverse employment action, and similarly situated individuals who are not members of her protected class were treated more favorably. *See McDonnell Douglas*, 411 U.S. at 802 and n.13 ("The facts necessarily will vary in Title VII cases, and the specification [here] of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."); *White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004). If a termination is at issue, then the plaintiff must provide evidence that she was meeting her employer's legitimate expectations at the time of the adverse employment action and that the position remained open or was filled by similarly qualified applicants outside the protected class. *Hill*, 354 F.3d at 285. If a plaintiff establishes a *prima facie* case, then the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its action. Once the employer has met that burden of production, then the presumption of discrimination under the *prima facie* case goes away and the plaintiff must prove the employer's proffered justification is pretextual. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513-14 (4th Cir. 2006). This final inquiry "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Beginning with the last, but most important, disciplinary decision of termination, Defendants have proffered the Grievance Appeal Decision ("GAD III") of the Office of Administrative Hearings for Baltimore County. (Grievance Appeal Decision, Sept. 19, 2011, Defs.' Mot., Ex. 16.) Hurtt was cited for violations of several policies and procedures, including

the requirements to refrain from coarse, profane, or disrespectful language; to greet the public in a courteous and professional manner and promote public relations by giving citizens assistance when appropriate; not to be insubordinate or disrespectful to a supervisor; to obey any lawful command or order, either verbal or written given by any supervisor; to be strictly responsible for the proper performance of her duties; and to observe and maintain the chain of command at all times by first obtaining permission from the employee's immediate supervisor to see the next higher authority. (*Id.* 1) Hurtt was also cited for violations of the Baltimore County Code pertaining to employees, specifically, for being incompetent or inefficient in the performance of her duty; for being brutal or offensive in her treatment of the public or fellow employees; for violating any lawful official rule, regulation, or order or failing to obey any lawful and reasonable direction given by her supervisor; for engaging in conduct such as to bring the county classified service into disrepute; and engaging in fighting or creating any disturbance while engaged in county business. (*Id.* 2.)

GAD III noted that the charges at issue had been preceded by other disciplinary actions including two five-day suspensions, one in September 2009 and the other in May 2010. (*Id.* 2.) Additionally, it was noted that Hurtt had been given counseling sessions (*id.* 2) and that she had been involved in approximately eleven different hearings during her tenure as a Department employee (*id.* 3). An administrative hearing is triggered by a supervisor's narrative requesting the hearing. (Alderman Dep. 75:3-14, 77:4-14.) The purpose of an administrative hearing is to determine if discipline is needed; the hearing itself is not considered a disciplinary action. (Tyler Dep. 23:1-8.) Verbal counseling is also not considered to be a form of discipline; its purpose is to correct behavior. (*Id.* 24:7-21.) Alderman testified in her deposition that she had (apparently on an occasion different from the one that resulted in the narrative for Hurtt) written a narrative

6

for a white employee. (Alderman Dep. 80:5-18.) She also had written a field note, which is a milder form of discipline, for another white employee. (*Id.* 85:5—87:2.)

It is clear from GAD III that Hurtt was not meeting her employer's legitimate expectations at the time of her termination. The administrative law judge ("ALJ") who authored GAD III noted he had received testimony from Alderman and Hurtt at the grievance appeal hearing and reviewed Hurtt's personnel file before reaching his decision denying Hurtt's grievance as to her ten-day suspension and dismissal from the Department. (GAD III at 2-3.) The ALJ specifically cited Alderman's testimony relating to Hurtt's "very poor management and communication skills toward the [ASU] clients she deals with on a daily basis." (*Id.* 2.) Further, Alderman testified Hurtt had "failed to follow through on setting up work assignments for the community service hours that clients were court ordered to perform." (*Id.*) The ALJ also heard Alderman testify about Hurtt's difficulty in dealing with supervisors in the Department and in following the proper chain of command when raising complaints. (*Id.*) The file reflected, as earlier noted, two prior five-day suspensions. (*Id.*) Alderman testified to Hurtt's "loud and disruptive" behavior within the ASU and to "the many attempts at counseling" directed at Hurtt's unacceptable behavior. (*Id.*)

Hurtt also testified before the ALJ, who noted that "[h]er attempts at explaining these incidences were not well reasoned and her presentation was difficult at times to follow." (*Id.* 3.) The ALJ concluded that "there exists clear and convincing evidence that Ms. Hurtt has been insubordinate and disrespectful to her immediate supervisor, Mrs. Alderman, and that she has failed to obey the lawful orders given to her by her supervisors and has treated her clients as well as members of the public in a rude and disrespectful manner." (*Id.*) He noted that the prior attempts at progressive discipline with Hurtt had been unsuccessful because "her disrespectful

7

and insubordinate demeanor continues to exist within the department." (*Id.*) After the ALJ denied Hurtt's grievance appeal, she took a further appeal to the Personnel and Salary Advisory Board ("Board") of Baltimore County, which also held a hearing and received testimony and evidence as well as arguments of counsel for both parties. (Defs.' Mot. Ex. 17, PSAB Order, Dec. 14, 2011.) Based on that hearing, the Board adopted the written opinion of the ALJ and denied Hurtt's appeal. (*Id.*) Because the evidence before the Court shows Hurtt was not meeting her employer's legitimate expectations when she was terminated, she is unable to meet this element of the *prima facie* case as to this disciplinary decision. In addition, no evidence of nonblack comparators is before the Court, so it cannot be inferred that her termination for the conduct in which she engaged was a less favorable outcome than any disciplinary proceeding for similar conduct by nonblack employees. Even if it could be concluded that Hurtt met the *prima facie* case, Defendants have produced legitimate, nondiscriminatory reasons for her termination, and Hurtt has provided no evidence of pretext.

Next, the Court examines the two five-day suspension decisions. These are subject to a similar kind of analysis pertaining to the *prima facie* case. Although these decisions related to different incidents, they were both dealt with at the same time by the Labor Commissioner Designee (apparently, a similar position to that of administrative law judge, *see* Defs.' Mot. Supp. Mem. 6 n.6) as well as the Board. Hurtt's grievances were denied in both instances, with the hearing officer, and ultimately the Board, concluding that Hurtt had "engaged in brutal or offensive treatment of fellow employees and spread malicious gossip or rumors about her supervisor" (*id.* Ex. 13, PSAB Order, Mar. 24, 2011) and "did refuse to follow the direct and lawful order by a Supervisor when she was told only to sign her name to a form and instead chose to write additional comments" (*id.* Ex. 15, PSAB Order, Mar. 24, 2011). Because Hurtt's

8

behavior underlying these suspensions was contrary to the Department's legitimate expectations of her job performance, she also fails to satisfy this element of the *prima facie* case as to these two disciplinary decisions. Further, these suspensions cannot be judged to be imposed in a fashion less favorable to Hurtt than to nonblack employees because no nonblack comparators' evidence is before the Court. As with her termination, if it is presumed that she has satisfied the elements of the *prima facie* case, she has failed to overcome Defendants' legitimate, nondiscriminatory reasons for imposing these suspensions on her.

In her complaint, Hurtt mentions a one-week suspension but does not specify when this occurred (Am. Compl. ¶ 49), and no evidence is before the Court pertaining to it. (It is possible that this allegation encompasses one of the two suspension decisions just discussed, but the Court is unable to determine whether these are connected or not.) Without more detail and evidence, the allegation is insufficient in itself to support a *prima facie* case of discrimination. Hurtt also mentions a written reprimand she received in October 2009 relating to her use of Family and Medical Leave Act ("FMLA") leave. (*Id.* ¶¶ 42-44.) The Court assumes *arguendo* that this written reprimand constitutes an adverse employment action, but notes that it occurred during the same time she was the subject of a disciplinary action for rule violations that precipitated one of her five-day suspensions. (Defs.' Mot. Ex. 12, Grievance Appeal Decision, Dec. 7, 2010.) Thus, she is unable to satisfy the element of the *prima facie* case that requires a showing that she was meeting her employer's legitimate expectations at the time of the reprimand. As well, no evidence before the Court indicates she was treated less favorably regarding FMLA leave than nonblack employees.

The Court considers the preceding incidents to comprise the sum total of disciplinary decisions contested by Hurtt. With regard to Hurtt's claim that her terms and conditions of

employment were less favorable than similarly situated nonblack employees, the Court has found no evidence of any disparities in compensation, job title, assigned duties, or physical facilities. Hurtt's complaints, while myriad, are presumably intended to suggest that she was subjected to racial harassment that resulted in a hostile work environment. In order to be successful on her claim, she must show that she experienced (1) unwelcome conduct, (2) based upon the plaintiff's race, (3) that was "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment" and (4) "is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (internal quotation marks and citations omitted).

Hurtt has complained about many things, but none of them can be considered racial harassment. For example, Hurtt complains of not being reimbursed by the Department for a parking ticket she received when she parked in a restricted area while attending a court proceeding; she alleges a white coworker was reimbursed for a ticket received under the same circumstances at an earlier time. (Am. Compl. ¶¶ 20-21.) Defendants, however, have provided Alderman's affidavit stating clearly that the Department did not reimburse the white coworker for her ticket and, further, did not ask Baltimore County's Revenue Authority to do so. (Defs.' Mot. Ex. 5, Alderman Aff. 1-2.) Hurtt has provided no admissible evidence to controvert Alderman's affidavit. Hurtt also complains that in August 2009 Alderman refused to let Hurtt explain her position concerning violating an offender while allowing a white coworker to explain her actions. (Am. Compl. ¶ 23.) Even if true, this vague allegation does not establish racial harassment by Alderman, who is herself of the same race as Hurtt.

Hurtt also alleges she "has been verbally attacked on several occasions by her Caucasian coworkers in an unprofessional and volatile nature while working in the unit" (*id.* ¶ 24), but

10

provides no evidence of any specifics. Even if such verbal attacks had occurred, Hurtt's claim that they amount to racial harassment is based merely on the race of the speakers, not on whether anything they said was a product of a racially discriminatory intent or created a sufficiently severe or pervasive atmosphere of racial hostility. Equally vague are her allegations that Alderman insulted Hurtt several times in the presence of nonblack coworkers and "frequently humiliated Hurtt with disparaging comments about her work in meetings and other open forums." (*Id.* ¶¶ 26, 28.) No evidence is in the record to allow a conclusion that anything Alderman said to her was either racially offensive or arose from racial animus. This conclusion is also applicable to Hurtt's allegations that her supervisors delayed getting medical care for Hurtt one day when Hurtt had a panic or anxiety attack at the office. (Am. Compl. ¶¶ 56-58; Hurtt Dep. 96:17—109:14.) The evidence in the record indicates that the Department had a standard protocol for responding to requests for medical assistance. (Tyler Dep. 135:15—136:12.) Further, "911" was called and an ambulance dispatched to take Hurtt to the hospital. (*Id.* 138:21—139:1.) The Court is unable to determine if the Department responded differently to Hurtt's situation based on her race because no evidence is presented as to nonblack comparators.

Also unmeritorious are Hurtt's claims that her complaints to supervisors about her black supervisor and white coworkers were ignored. Her generalized complaints about others may or may not have had any merit, but again, no evidence shows that her complaints were about racially offensive or discriminatory conduct, which is the concern at issue in this case. And her merely labelling others' conduct as "discriminatory," "harassing," or "retaliatory" is insufficient to carry the day. As an example of this mislabelling, the Court notes Hurtt's deposition testimony that a white coworker named Judy Trefill interrupted Hurtt at a staff meeting and

"abruptly cut [her] off and got really rude with [her]" (Pl.'s Opp'n, Hurtt Dep. 54:5-12, Mar. 5, 2013) and that Hurtt told Alderman that Hurtt did not want to ask Trefill about a court order because Hurtt did not "like the way [Trefill] responds to" her and also told Alderman that Trefill "makes little slurs towards" her (*id.* 57:3-10). Rude behavior unrelated to Hurtt's race, as this alleged conduct seems to have been, does not suffice for proof of a racially hostile work environment. Further, Hurtt's employment of the term "slurs," without more, does not allow an inference that anything Trefill said to Hurtt was, in fact, a racial slur. Finally, Hurtt's recounting of an incident when Trefill allegedly mocked Hurtt—and Hurtt's complaint thereof was allegedly not acted upon (Hurtt Dep. 59:15—60:11)—ignores Alderman's testimony that she counseled both Hurtt and Trefill, Hurtt because she allegedly provoked Trefill and Trefill because she allegedly mocked Hurtt (Alderman Dep. 97:6-19).

Hurtt also complains about an incident when a white coworker "intentionally placed a dirty urine sample in Hurtt's office." (Am. Compl. ¶ 83.) The evidence shows that indeed a white coworker placed a vial of urine in Hurtt's office, but absolutely no evidence exists to show that it was done with racially discriminatory intent. (Alderman Dep. 80:1-2, 83:1-5. *See also* Defs.' Reply Ex. 2, Alderman Dep. 84:19—85:21.) The coworker was reprimanded for not properly disposing of the urine specimen in the biohazard box in the Department and told not to let it happen again. (Alderman Dep. 84:19—86:5.) This seems to be another instance of a conflict with a coworker that Hurtt labels as "discriminatory" based only on the racial identity of the coworker.

The Court finds no evidence in the record of racial discrimination against Hurtt.

### B. Count II: Retaliation – 42 U.S.C. § 1981

Hurtt's second count is premised upon alleged retaliation by Defendants for filing "internal complaints regarding the treatment to which she has been subjected to because of her race." (Am. Compl. ¶ 112.) Although not specifically mentioned in Count II, Defendants have provided a copy of an Equal Employment Opportunity Commission ("EEOC") charge that Hurtt filed September 24, 2009 (Defs.' Mot. Ex. 1), and the Court presumes that Hurtt considers it a part of the foundation for Count II. It is noted that the EEOC complaint is premised upon the same sorts of allegedly discriminatory behavior that were the subject of Count I. It is also noted that the date of the EEOC complaint puts it in the middle of the administrative process relating to Hurtt's first five-day suspension, which was premised upon events occurring in June 2009. (*Id.* Ex. 12.)

A plaintiff may establish a *prima facie* case of retaliation by proving three elements: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) the adverse employment action is causally linked to the protected activity. *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005). Although it is not necessary that an employee's underlying discrimination claim be meritorious to succeed on a retaliation claim, s*ee Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 357 n.1 (4th Cir. 1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), it is necessary that an employee have an objectively reasonable belief that the employer committed an unlawful employment practice, *see Navy Fed. Credit Union*, 424 F.3d at 406; *Greene v. A. Duie Pyle, Inc.*, 170 F. App'x. 853, 856 (4th Cir. 2006) (unpublished). As the Fourth Circuit concluded in *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 341 (4th Cir. 2006), "no objectively reasonable person could have believed that the [plaintiff's work environment] was, or

was soon going to be, infected by severe or pervasive racist, threatening, or humiliating harassment." 458 F.3d at 341. "Objectively reasonable employees can and do recognize that not every offensive comment will by itself transform a workplace into an abusive one." *Id.* at 342. This Court has found no basis whatsoever for Hurtt to assert charges of discrimination against Defendants. Consequently, she lacked an objectively reasonable belief that she was actually being subjected to unlawful harassment, and her claim of retaliation fails. Even if she could establish a *prima facie* case, Defendants have advanced legitimate, nonretaliatory reasons for Hurtt's suspensions and termination, and Hurtt has provided no evidence that those reasons are pretextual. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (applying *McDonnell Douglas* burden-shifting scheme to claim of retaliation by employer against employee). The Court presumes that Defendants were aware of Hurtt's EEOC charge and numerous internal complaints. But "'mere knowledge on the part of an employer that an employee . . . has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons' for adverse personnel action against that employee." *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).

Hurtt's claim of retaliation fails.

C. *Count III: First Amendment – 42 U.S.C. § 1983*

In her complaint, Hurtt alleged the following as supportive of her claim that her rights under the First Amendment to the United States Constitution were violated:

> After the anxiety attack alleged in ¶ 56, Hurtt was on approved leave from November 2009 to January 2010.

> Despite her approved leave, Alderman issued Hurtt the only negative evaluation she received during her tenure with the Alternate [*sic*] Sentencing Unit.

> Hurtt complained and refused to sign the evaluation it [*sic*] was false, and because it covered the period while she was out on leave.
>
> Defendants disciplined Hurtt for not obeying lawful orders by refusing to sign the evaluation, and issued her the suspension alleged in ¶ 41.
>
> Hurtt was also placed on a Performance Improvement Plan (PIP) for two (2) months.

(Am. Compl. ¶¶ 122-26.)

The Grievance Appeal Decision ("GAD II") shows that the second five-day suspension was not premised upon Hurtt's refusal to sign her performance evaluation but upon her ignoring repeated, explicit instructions not to write comments upon her evaluation form and instructions to put her comments onto a separate piece of paper that would become an attachment to the evaluation. (Defs.' Mot. Ex. 14.) Under either Hurtt's alleged scenario or GAD II's recounting of the facts leading to her suspension, Hurtt fails to establish a cognizable case of violation of First Amendment rights. Further, the Court observes that Hurtt failed to include an argument as to Count III in her response to Defendants' motion for summary judgment. Thus, the Court considers this argument abandoned. Even so, the Court has considered the evidence and the law and has concluded the claim has no basis.

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). A valid cause of action of retaliation for First Amendment speech is premised upon three elements:

> First, the plaintiff must demonstrate that his or her speech was protected. Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action.

*Id.* at 685-86 (citations omitted).

Whether a public employee was retaliated against for speech in violation of the First Amendment depends in part upon whether the employee was speaking about a matter of public concern. *Durham v. Jones*, 737 F.3d 291, 299 (4th Cir. 2013). "'Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community.' This does not include 'personal complaints and grievances about conditions of employment.'" *Id.* at 300-01 (citations omitted). It is clear that Hurtt's conduct in relation to her signing her performance evaluation is not "an issue of social, political, or other interest to a community" but, instead, is only in the category of "personal complaints and grievances about conditions of employment." Consequently, Hurtt fails to establish a violation of her First Amendment rights.

### D. Count IV: Fifth Amendment – 42 U.S.C. § 1983

For this count, Hurtt merely alleged that Defendants' "above-described acts" in paragraphs 1 through 129 of her complaint constituted a violation of her substantive and procedural due process rights. (Am. Compl. ¶ 132.) In her opposition to Defendants' motion for summary judgment, she submitted no argument on her Fifth Amendment claim. Thus, the Court considers it abandoned. Even if it were not abandoned, the record is replete with evidence of a thorough, fair process for the disciplinary decisions Defendants made. Hurtt's Fifth Amendment claim fails.

### E. Count V: Fourteenth Amendment – 42 U.S.C. § 1983

The only allegation in this count that has not been previously addressed is a denial of equal protection. (Am. Compl. ¶ 135.) Hurtt makes vague allegations that O'Neill, Tyler, and Alderman unconstitutionally utilized, interpreted, and enforced employment rules and regulations against her on the basis of her race and sex. (*Id.* ¶¶ 137-39.) Hurtt also fails to make any argument on this claim in her opposition to Defendants' motion, and, consequently, this

claim is also considered abandoned. Notwithstanding its abandonment, the claim fails based on a complete absence of evidence that rules and regulations were enforced against her on the basis of her race and sex.

### F. Count VI: Conspiracy to Interfere with Civil Rights – 42 U.S.C. § 1985(3)

In Hurtt's last count, she claims Defendants conspired to deprive her of due process, equal protection, and equal privileges and immunities under the laws. (Am. Compl. ¶ 144.) As with other claims, Hurtt has abandoned this claim by her failure to include any argument on it in her opposition to Defendants' motion. And as with the other abandoned claims, the Court has examined the record and has found absolutely no evidence of a conspiracy to deprive Hurtt of any constitutional right on the basis of a "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). *See also A Society without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (one element of section 1985(3) claim is specific class-based, invidiously discriminatory animus), *cert. denied*, 132 S. Ct. 1960 (2012). This claim also fails.

### IV. Conclusion

The Court concludes that no genuine dispute of material fact exists and that Defendants are entitled to judgment as a matter of law. A separate order will issue.

DATED this <u>10th</u> day of February, 2014.

                                                      BY THE COURT:

                                                     /s/
                                                  James K. Bredar
                                                  United States District Judge